**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FC FUNDING LLC,**

        **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　Case No:  6:12-cv-1713-Orl-31KRS

**MCJ AUTO SALES OF CENTRAL**
**FLORIDA, INC.,**

        **Defendant.**

## ORDER AND NOTICE OF HEARING

This matter comes before the Court pursuant to FC Funding, LLC's Motion for Preliminary Injunction and Supporting Declarations, construed as a motion for Temporary Restraining Order. (Doc. 6).  For the reasons set forth below, the Court will grant the Motion and issue a temporary restraining order.

### FINDINGS OF FACT

On the basis of FC Funding, LLC's Verified Complaint (Doc. 1) and Motion for Preliminary Injunction and Supporting Declarations (Doc. 6), this Court finds as follows:

1. M C J Auto Sales of Central Florida, Inc. ("MCJ") is an automobile dealer.  When MCJ's customers purchase vehicles on credit, they execute a retail installment sales contract, which *inter alia,* specifies the customer's monthly payments and makes clear that if the customer defaults under the agreement the vehicle may be re-possessed.  *See* Verified Compl. (Doc. 1 at ¶ 6).

2. SFG is a finance company in the auto lending business. SFG purchases receivables from automobile dealers such as MCJ and then sells these receivables to the secondary investment community. *Id.* at ¶ 7.

3. FC Funding is an automobile finance company in the business of, *inter alia,* purchasing retail installment sales contracts in the secondary market from companies such as SFG. *Id.* at ¶ 8.

4. On or about March 9, 2011, SFG and FC Funding entered into a Master Receivables Purchase Agreement ("SFG Agreement"), pursuant to which FC Funding agreed to purchase certain motor vehicle receivables owned by SFG from time to time. *See* Verified Compl. at ¶¶ 9-10.

5. In 2012, MCJ sold the vehicles at issue in this case on credit (the "Financed Vehicles") to ten of its customers (the "FC Funding Obligors"). *See* Verified Compl. at ¶ 6. SFG purchased from MCJ the accounts receivables ("MCJ Receivables"), retail installment sales contracts ("Retail Installment Sales Contracts") and the other contract documents evidencing the sale of the Financed Vehicles to the FC Funding Obligors (the Receivables, Retail Installment Sales Contracts and other contract documents are collectively the "Security Interest Documents"). *See id*. at ¶¶ 6, 7.

6. Pursuant to the SFG Agreement, FC Funding, in turn, purchased and was assigned the Security Interest Documents by SFG on February 23, 2012, March 28, 2012, May 17, 2012, June 22, 2012 and July 9, 2012. *See id.* at ¶ 13.   FC Funding purchased the Security Interest Documents in good faith for valuable monetary consideration and took possession of the original Security Interest Documents in the ordinary course of FC Funding's business. *See id.* at ¶ 17. FC Funding purchased the Security Interest Documents without any knowledge of any claim by MCJ whatsoever. *See id.* at ¶¶ 18, 19.

7. Within a few days of the purchase of the Security Interest Documents by FC Funding, the FC Funding Obligors were informed of the purchase and instructed as to where to remit the monthly payments due pursuant to such documents, including the Retail Installment Sales Contracts. *Id*. at ¶14; *see also* Declaration of Tiffany Dornford (Doc. 6-6).

8. On or about the end of September 2012, several months after selling the Security Interest Documents to SFG, MCJ advised FC Funding that it had not received all or part of the monies due it in connection with its sale of the Security Interest Documents to SFG and that it would start repossessing the Financed Vehicles. *See* Verified Compl. (Doc. 1) at ¶¶ 18, 20, 21.

9. MCJ did not inform FC Funding of the amount of money SFG allegedly owed it. FC Funding, which, again, purchased the Security Interest Documents without knowledge that SFG allegedly owed MCJ monies or of claims by MCJ against SFG, reminded MCJ that FC Funding is the current and exclusive owner of the Security Interest Documents and that MCJ had no legal right to re-possess the Financed Vehicles. *Id*. at ¶ 22

10. FC Funding also requested MCJ turn over the original vehicle certificates of title for the Financed Vehicles, which are part of the Security Interest Documents, but which were still pending receipt from the Florida Department of Highway Safety and Motor Vehicles at the time FC Funding purchased the Security Interest Documents. *Id*. at ¶¶ 22, 38-43. These Vehicle Title Applications clearly reflect SFG as the lienholder. *Id*. at ¶ 41. Pursuant to the SFG Agreement, FC Funding was also provided with powers of attorney by SFG which authorize FC Funding to substitute FC Funding as the correct lienholder on the vehicle titles. *Id*.

11. MCJ, however, refused to turn over the original vehicle certificates of title documents so FC Funding has not been able to revise the vehicle title documents. *Id*. at ¶¶ 43-44. Further,

MCJ, began re-possessing the Financed Vehicles and has refused to return the Financed Vehicles to the FC Funding Obligors unless they execute new retail installment sales contracts that require payments to be made to MCJ or its assignee instead of to FC Funding. *Id*. at ¶¶ 20-21. In fact, MCJ re-possessed and refused to return the vehicle and infant seat of a single mother with no other means of transportation. *Id*. at ¶ 20.

12. MCJ's behavior has caused several of the FC Funding Obligors to stop paying FC Funding the monies due it under the Security Interest Documents. *Id*. at ¶ 26.

## **CONCLUSIONS OF LAW**

In light of the foregoing Findings of Fact, the Court further finds as follows:

1. FC Funding has demonstrated a substantial likelihood that it will succeed on the merits of its claims against MCJ, including its claim that MCJ tortiously interfered with FC Funding's business and contractual relationships with the FC Funding Obligors. Because FC Funding has come forward with evidence that it possesses the original Security Interest Documents and that it purchased the Security Interest Documents in good faith, in the ordinary course of its business, for new value, and without knowledge that the purchase allegedly violated some interest of MCJ, FC Funding has established a substantial likelihood that its ownership interest in the Security Interest Documents is superior to any interest of MCJ's in the Security Interest Documents. *See* Fla. Stat. §679.330. *See also Blazer Financial Services, Inc. v. Harbor Federal Savings and Loan Association*, 623 So. 2d 580, 583 (Fla. 4th DCA 1993) (holding that "one who purchases chattel paper in accord with the statutory requirements of section 679.308[1] has a priority interest in the chattel paper to the full extent of its face value.").

---

[1] Section 679.330 was former section 679.308.

2. FC Funding has also come forward with substantial evidence that MCJ "entrusted," as such term is used in section 672.401(2) of the Florida Uniform Commercial Code, to SFG the original Security Interest Documents, and that FC Funding purchased the Security Interest Documents in good faith in the ordinary course of its business, and with no knowledge of MCJ's alleged claim against SFG.  Thus, FC Funding has also established a substantial likelihood that its security interest in the Financed Vehicles is superior to any interest of MCJ in the Financed Vehicles.  *See* Fla. Stat. §672.401(2)-(3).  *See also Carlsen v. Rivera,* 382 So.2d 825, 826-827 (Fla. 4th DCA 1980) (purchaser who bought automobile for valid consideration and without notice of defect in title was a buyer in ordinary course of business and was entitled to prevail against interests of original owner who entrusted automobile to merchant in the business of selling cars).

3. Absent an injunction being entered, FC Funding has no adequate remedy at law and will suffer irreparable harm, which is presumed under Florida law because of FC Funding's claim for tortious interference of a business and contractual relationship.  *Special Purpose Accounts Receivable Cooperative Corporation v. Prime One Capital Company, LLC*, 125 F. Supp.2d 1093, 1105 (S.D. Fla. 2000) (" . . . irreparable injury is presumed in cases involving tortious interference with business relationship.")

4. MCJ will not be harmed by the issuance of a temporary restraining order.  The granting of a temporary restraining order will not leave MCJ without recourse.  In fact, MCJ will simply continue in the position it was in before it repossessed the Financed Vehicles, *i.e.* needing to pursue claims against SFG to recover the monies allegedly owed MCJ.  On the other hand, without a temporary restraining order, FC Funding would have to burden this Court for relief each time MCJ improperly repossesses and refuses to return a Financed Vehicle that is the

subject of the Security Interest Documents. Further, the FC Funding obligors will be burdened with the choice of (1) continuing to pay FC Funding to avoid being in breach of the Security Interest Documents while not having the use of their Financed Vehicle, (2) entering into new agreements with MCJ so they can have use of their vehicle, but being in default of the Security Interest Documents, or (3) paying both MCJ and FC Funding so they can have use of their Financed Vehicle and avoid being in default of the Security Interest Documents.

5. The public interest will be served by the issuance of a temporary restraining order. Specifically, a temporary restraining order will help restore the certainty to the types of receivable financing transactions involved here, including assuring consumers of financed vehicles that are the subject of such transactions that their vehicles will not be wrongfully repossessed when they are timely making the required payments. *See, e.g. Carlsen*, 382 So.2d at 826 (explaining that the purpose of Fla. Stat.§ 672.403(2) cited above is "to protect the buyer in the ordinary course of business and thus to eliminate impediments to the free flow of commerce.").

6. Federal Rule of Civil Procedure 65(c) conditions the issuance of a preliminary injunction or temporary restraining order on "the movant giv[ing] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." However, "the amount of security required by the rule is a matter within the discretion of the trial court and the court may elect to require no security at all." *Bell-South Telecomm., Inc. v. MCI Metro Access Transmission Servs., LLC*, 425 F. 3d 964, 971 (11th Cir. 2005). Courts applying their discretion to not require a bond have done so when "there is no basis in the record to determine the amount of a reasonable bond" or where the defendant has "not challenged Plaintiff's request that the Court not require a bond."

*Towbin v. Antonacci*, 2012 WL 3541703 at *16 (S.D. Fla. Aug. 7, 2012). MCJ bears the burden of proving there is a rational basis for any proposed bond. *Continental Group, Inc. v. KW Property Management, LLC*, 2009 WL 3644475 at *6 (S.D. Fla. Oct. 30, 2009) ("The burden is on the party seeking security to establish a rational basis for the amount of a proposed bond."). MCJ, however, has not responded to the Motion, and thus, has not provided any rational evidence to support an amount for a bond. Consequently and because there is no basis in the record to determine the amount of a reasonable bond, FC Funding is not required to post a bond at this time.

## **TEMPORARY RESTRAINING ORDER**

Accordingly, Plaintiff's Motion for Preliminary Injunction, construed as a Motion for Temporary Restraining Order, is **GRANTED**. It is further **ORDERED** as follows,

1. Defendant M C J Auto Sales of Central Florida, Inc., and its agents and representatives are hereby **ENJOINED AND PROHIBITED** from repossessing any of the Financed Vehicles listed below,

| FC Funding Obligor | VIN# OF FINANCED VEHICLE |
|---|---|
| Aponte, Rolando | 1HGFA16856L065526 |
| Benchic, Jennifer | 2G1WB58K281233295 |
| Cartwright, Jennifer | 4A4MM31S94E023687 |
| Crafton, Megan | 1G1ZD5E08AF202237 |
| Crawford, Clyde | 1FMZU67KX4UB03829 |
| Dornford, Tiffany | 5NPET46V77H275688 |
| Gillon, Robert | 1B3LC56K98N153485 |
| Goodwin, Shakina | 1N4AL11D85C151070 |

| Reyes, Robert | 3N1AB51D34L731661 |
|---|---|
| Thrower, Anna | 3N1BC11E77L433735 |

2. To the extent Defendant, or any of its agents or representatives, have already repossessed any of the vehicles listed above, Defendant is further **ORDERED** to return said vehicles to the respective FC Funding Obligors by no later than five (5) days from the entry of this Order;

3. It is further **ORDERED**, that within five (5) days of entry of this order, Defendant shall turn over to FC Funding the original vehicle certificates of title for the Financed Vehicles listed in the above-chart;

4. This Order shall expire at **5:00pm on Wednesday, December 19, 2012**, or upon the granting of a motion filed pursuant to Fed. R. Civ. P. 65(b)(4), whichever occurs first;

5. The bond requirement is waived;

6. The undersigned will hold a hearing on whether to convert the instant temporary restraining order into a preliminary injunction or to dissolve the same at **9:00am on Tuesday, December 18, 2012**, in Courtroom #5A, George C. Young United States Courthouse and Federal Building, 401 W. Central Boulevard, Orlando, Florida;

7. Plaintiff shall expeditiously serve on Defendant a copy of this Order and Notice of Hearing.

**DONE** and **ORDERED** in Orlando, Florida on December 5, 2012.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

Case 6:12-cv-01713-GAP-KRS   Document 11   Filed 12/05/12   Page 9 of 9 PageID 263